```
              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF OREGON

                       PORTLAND DIVISION


UNITED STATES OF AMERICA,      )
                               )
                   Plaintiff,  )  Case No. 3:20-mj-00164
                               )
              v.               )
                               )  July 24, 2020
TAWASI,                        )
                               )
                   Defendant.  )
_____)




                       FIRST APPEARANCE

                   TRANSCRIPT OF PROCEEDINGS

             BEFORE THE HONORABLE JOHN V. ACOSTA

           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
```

```
 1                    TELEPHONIC or VIDEO APPEARANCES
 2   FOR THE PLAINTIFF:
                              SARAH BARR
 3                            United States Attorney's Office
                              1000 SW Third Street
 4                            Suite 600
                              Portland, OR 97204
 5
     FOR THE DEFENDANT:
 6                            ALISON M. CLARK
                              Federal Public Defender's Office
 7                            101 SW Main Street
                              Suite 1700
 8                            Portland, OR 97204
```

```
20   COURT REPORTER:    Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
                        United States District Courthouse
21                      1000 SW Third Avenue, Room 301
                        Portland, OR 97204
22                      (503)326-8191

23                            *   *   *
```

```
 1                    TRANSCRIPT OF PROCEEDINGS
 2                         (July 24, 2020)
 3   (Video conference:)
 4            THE COURT:  Mr. Hickey, can you hear me?
 5            THE DEFENDANT:  Are you referring to me?  My name is
 6   Tawasi.
 7            THE COURT:  All right.  Mr. Tawasi, can you hear and
 8   see me?
 9            THE DEFENDANT:  Yes.
10            THE COURT:  Thank you.
11        Ms. Clark is on the video as well.  She's from the public
12   defender's office.
13        Ms. Barr, you're on the phone still; correct?
14            MS. BARR:  Yes, that is correct.
15            THE COURT:  All right.  Go ahead and call the case,
16   please.
17            MS. BARR:  Thank you, Your Honor.  The next case on
18   today's calendar is United States of America v. Tawasi.  This
19   is Case No. 3:20-mj-00164.  We'll be proceeding on just this
20   case this morning.  This is for a complaint associated with the
21   charge 18 United States Code 119(a)(2).  We are here today for
22   an initial appearance and arraignment on that complaint.
23        And as you mentioned, defendant is present today,
24   appearing by video teleconference, represented by
25   Ms. Alison Clark, also appearing by video teleconference, and I
```

```
 1  am appearing by phone.
 2              THE COURT:  Thank you.
 3       Ms. Clark, go ahead, please.
 4       Ms. Clark, you're muted.
 5              MS. CLARK:  Sorry about that, Your Honor.  Thank you.
 6       Alison Clark with the Federal Public Defender's Office,
 7  Your Honor.  I have met with Mr. Tawasi prior to coming into
 8  court.  I believe he is without the recourses to retain
 9  counsel, and I would ask to be appointed to represent him.
10              THE COURT:  Thank you.
11       Mr. Tawasi, I'm appointing Ms. Clark as your lawyer in
12  this case.  This appointment is at no cost to you.  You can
13  talk to your lawyer confidentially.  Everything you talk to
14  your lawyer about is privileged.  No one can make you reveal
15  what you and your lawyer talk about.
16       You have the right to remain silent regarding the
17  allegations against you.  No one can make you talk about those
18  allegations.  If you talk to persons other than your lawyer
19  about the allegations against you, those statements can be used
20  in evidence against you.  You also have the right to know the
21  allegations that have been made against you.
22       Do you understand these things?
23              THE DEFENDANT:  Yes, sir.
24              THE COURT:  Thank you.
25       Ms. Clark, go ahead, please.
```

1           MS. CLARK:  Thank you, Your Honor.
2      Your Honor, I think that where we stand right now with
3  this case is that Mr. Tawasi has been arrested but he has not
4  had the opportunity to review the criminal complaint, and I
5  have not had the opportunity to review the criminal complaint
6  because it hasn't been unsealed.
7      We have a pretrial services report that has listed in it
8  that this man is accused or will be accused of illegal re-entry
9  for being a Canadian citizen who is -- has re-entered the
10 United States.  He also is accused of another offense involving
11 interference of some kind, but we don't have any information on
12 which we could base a -- any kind of waiver of a preliminary
13 hearing at this point.
14     I'm concerned, though, about Mr. Tawasi.  His -- his
15 release -- his releasability, Your Honor.  I'm having a few
16 technical problems, but I do have a third-party custodian on
17 the line who has known Mr. Tawasi since he was 12 years old.
18 Mr. Tawasi has been living with him.  He is a business owner
19 and a well-regarded, you know, established business owner in
20 the Portland community.  So I don't want to get too ahead of
21 myself to get to detention, but we have -- things are muddled
22 with this because I have no criminal complaint.
23     I have a -- you know, the vaguest of allegations and a --
24 an open question with Pretrial Services that -- that has this
25 man being required to be detained, and that doesn't square with

1  what I learned about Mr. Tawasi during the interview at all.
2        So I -- that's the problem that I would ask the Court to
3  help us resolve today.
4            THE COURT:  All right.  All right.  For the record,
5  this morning, very late this morning, I was sent two different
6  complaints, each of which charged Mr. Tawasi, and they each
7  charged him with different offenses.  The first, as we've
8  already talked about, is the illegal re-entry.
9            UNIDENTIFIED SPEAKER:  (Indiscernible.)
10           THE COURT:  Mute your phone, please.
11           UNIDENTIFIED SPEAKER:  Hello?
12           THE COURT:  Please mute your phone.
13           MS. CLARK:  My apologies, Your Honor.  That was my
14  fault.  We're muting.  Okay.  Sorry.
15           THE COURT:  The first that we have -- and the one we
16  have talked about is the illegal re-entry.  Mr. Tawasi is
17  alleged to be a citizen of Canada.  He is also alleged to be
18  here without permission, and he is also alleged to have a
19  different name other than Tawasi; specifically, by the last
20  name of Hickey.
21       The other charge, the other complaint that came in, and
22  which I signed a few hours ago, pertains to the recent activity
23  around the Hatfield Courthouse and specifically pertains to
24  allegations that Mr. Tawasi has been shadowing federal law
25  enforcement, finding out where they are staying in the Portland

1  area, while they are on -- here on temporary duty in the
2  courthouse, and, to use the current vernacular, of essentially
3  doxing those individuals by revealing on social media the
4  hotels in which they are staying and encouraging people to
5  either interfere with their sleep or their meals or in other
6  ways.  That is the other complaint.
7       Both of those I signed today after I swore the respective
8  agents whose affidavits I reviewed.
9       It doesn't surprise me you don't have those complaints
10 because they were sent back to the U.S. Attorney's Office only
11 30 to 45 minutes before I came out on the bench.  As you know,
12 recent events have caused a considerable increase in the number
13 of individuals who are being arrested and being seen during
14 criminal calendar, and everyone is scrambling to try to follow
15 the usual processes.
16      So today is Friday.  Here is my recommendation -- or my
17 suggestion, and then Ms. Clark, I'll hear from you; and then,
18 Ms. Barr, I'll hear from you.
19      We can't very well have an initial appearance for either
20 of the two complaints against Mr. Tawasi until you know what
21 they say and you have talked to him about it.  That's just the
22 way we do things here.  That is required.
23      Second, having a detention hearing when you don't know
24 what the basis of the allegations are in the two complaints is
25 also something that we probably can't do.  You can't make an

1  argument on his behalf, which means that I can't consider a
2  full record of his release.  I do know that I signed both
3  arrest warrants and criminal complaints for him today.
4      So my suggestion is to holding over to the Monday calendar
5  when we can address all of those things together.
6      Ms. Clark?
7          MS. CLARK:  Well, Your Honor, I -- it's -- of course
8  I'm concerned, and I object as a matter of Mr. Tawasi's
9  liberty.  I'm aware of the statutes which have been listed and
10 is on the -- on the face sheet, of -- the nature of those.  I
11 know that both are felonies, but I -- I -- you know, if we have
12 to wait until Monday, I object to that, and I -- it's
13 regrettable because I know that Mr. Tawasi has a place to go,
14 and we have a plan for him to be in touch with me and return to
15 court and that he is -- has a lot of ties to the community and
16 that there -- nothing in the -- although, I can understand the
17 Court's real concern about the allegation, in particular, as to
18 this doxing question, you know, I know very little about it.
19     Neither of those things sound like they are of such a
20 grave risk that the Court can't apply 4142 to order Mr. Tawasi
21 to obey all laws and to apply the -- the letter of the law to
22 him, as to conditions of detention, so as the least restrictive
23 means to ensure that he returns to court and -- and follows
24 this Court's orders.
25     I have already talked to Mr. Tawasi about agreeing to stay

1  away from the courthouse area, to an agreement to a curfew, and
2  he is very open -- and we expected those things today,
3  appearing before the Court.
4      So I -- I would like to still be heard on detention.  And
5  if we can talk at the end of the calendar, if someone can
6  provide me with an unsealed criminal complaint about the
7  allegations, that would be fine.  We have a lot to do today
8  together, but I -- I don't want to agree that Mr. Tawasi should
9  be held in custody for 48 hours on something that he's, you
10 know, not been found guilty of and that there's not probable
11 cause because he hasn't been -- you know, that hasn't been
12 waived at this point.
13     Thank you.
14         THE COURT:  Ms. Barr, your thoughts?
15         MS. BARR:  Your Honor, would you like my thoughts on
16 detention at this point or on simply how to --
17         THE COURT:  Ms. Clark doesn't even have the
18 complaints.  I barely got them in time to get them signed and
19 sworn and get out here on the bench.  So what do we do now?
20 That's my question.
21         MS. BARR:  I understand, Your Honor.  I agree with
22 your proposal to set this over to Monday so that everyone has
23 ample time and sufficient time to adequately advocate their own
24 position and to understand the totality of the facts and the
25 law.  As you mentioned, this is a fact-specific situation.

1  There is a lot going on.  We're trying to proceed within normal
2  protocol, and it's difficult to do that when there is so much
3  going on.
4     I have provided Ms. Clark with the face sheet of the
5  criminal complaint.  I neglected to say at the time I called
6  the case that I do move to unseal the face sheet of the
7  complaint but to keep the affidavit sealed at this time.  So I
8  do make that motion now.
9          THE COURT:  Well, I don't understand how Ms. Clark
10 can respond -- let me back up.  Let me start here:  If we were
11 prepared to talk about detention today, what would the
12 government's position be in either or both cases?
13         MS. BARR:  Our position would be that he is a flight
14 risk and --
15         THE COURT:  Yeah, so there's no way we can talk about
16 that unless Ms. Clark knows why the government thinks he's a
17 flight risk.
18    Now, I understand the illegal re-entry issue, but if
19 you're going to base -- if the government will base any of its
20 argument on the facts present in the other case, whether those
21 facts are used to support an argument that he's a flight risk
22 or to support an argument that he's a danger to the community,
23 then Ms. Clark has to see the underlying allegations upon which
24 the other complaint is based, and she can't do that because she
25 doesn't have it right now.

1          And since the government is seeking to keep it sealed,
2     it -- we're at an impasse.
3          Ms. Clark, you're muted.
4               MS. CLARK:  Your Honor, thank you.
5          If I may, I think that, you know, we can craft
6     restrictions as to Mr. -- Mr. Tawasi to get us to Monday.  For
7     instance, I understand this has something to do with Twitter.
8     Mr. Tawasi can be ordered not to go on social media, not to
9     use -- we can put a phone restriction on him.  We can put a
10    computer restriction on him, and I -- I also -- I understand
11    the sensitivity that if there is personal or restricted
12    information that is in the complaint, where the government
13    doesn't want to, sort of, make the situation worse by the
14    identifiers of the -- of locations, hotels, so forth, that's
15    understandable.  We can work with that.
16         But what is unacceptable to the defense is that a secret
17    pleading that the defense is not allowed to see and an
18    individual is not allowed to see would keep a man detained for,
19    you know, two, three days, when -- when it seems for all the
20    world that I've got a third-party custodian who is waiting on
21    the line, who is, you know, very happy to have Mr. Tawasi with
22    him.  I've got a man who's willing to comply.  We know quite a
23    bit about him from his pretrial services interview.
24         The names, places -- I mean, I can even verify -- it's
25    just a strange coincidence, but Mr. Tawasi and I even worked at

1   the same place in the '80s as teenagers.  I never met him, but
2   I know that the things that he talked about during his
3   interview square with a reality that exists that I'm familiar
4   with.
5       I think that Mr. Tawasi's willingness to participate in
6   the interview and his very solid third-party custodian who's on
7   the line, Mr. Jason Murray, of Flex Delivery, those things can
8   give the Court an assurance that we can pick this up again on
9   Monday with Mr. Tawasi present and available, that he will not
10  avoid or shirk his obligation to the Court, and I think he
11  can -- he can swear to that himself to Your Honor.
12      He's an unconventional person, but's he's not an
13  unaccountable person.  He has a well-established work history
14  and, I know, connection to, you know, friends that have lasted
15  decades and decades, who we have been able to reach very
16  quickly this morning.
17          THE COURT:  All right.  Thank you.
18      All right.  Look, here is what we're going to do:
19  Mr. Tawasi, I'm going to release you to the custody of the
20  third-party custodian.  You're required to be back either by
21  phone or video for the Monday calendar -- Monday, July 27, at
22  1:30 -- when both cases and the complaints in those cases will
23  be reviewed.
24      You will be advised of the charges against you,
25  specifically.  We'll talk about pleas and indictments and such.

1      You are not to use any -- any form of social media between
2 now and next Monday, any form, and that includes email in any
3 way.
4      Do you understand that?
5      You have to -- I can't hear you.
6      We don't have audio from the jail.  Can somebody please --
7           THE DEFENDANT:  Yes, sir.  I -- I hear and understand
8 those terms.  I'm willing to comply.
9           THE COURT:  I know that you have not seen the
10 complaint, but there -- that complaint includes allegations in
11 the -- in the other case, not the illegal re-entry case, that
12 you have been on or near the premises -- one or more premises
13 where federal law enforcement agents are currently staying, who
14 are working here in the courthouse.  We don't need to talk
15 about whether those allegations are true or not.
16      The other condition that I will impose is if you are going
17 to stay with your friend between now and next Monday, you just
18 stay there.  You can't go out for any reason, except to meet
19 with your lawyer, and you can't come within five blocks of the
20 federal courthouse, and you can't go anywhere else.  So just
21 keep your head down, stay out of trouble between now and Monday
22 afternoon.  More details will be discussed at that time.
23      Do you understand those things?
24           THE DEFENDANT:  Yes, sir.  Thank you, sir.
25           THE COURT:  I just want to make sure you understand

1  that if between now and next Monday you violate any of those
2  requirements, any of those conditions, including if you attempt
3  to flee the jurisdiction or make yourself unavailable for
4  hearing, it will simply add to the charges the government has
5  made against you, and it will considerably decrease the chances
6  that you will be released after Monday's hearing -- further
7  released after Monday's hearing.
8         Do you understand that?
9              THE DEFENDANT:  Sir, yes.  Yes, sir.
10             THE COURT:  All right.  Does Pretrial have any
11 questions?
12             THE PRETRIAL OFFICER:  Your Honor, not at this time.
13 Thank you.
14             THE COURT:  All right.  Thank you.
15      Ms. Barr, anything else for the government?
16             MS. BARR:  Your Honor, thank you.  Just a couple of
17 points, and my apologies because we sort of didn't go through
18 the normal order of process in the hearing today.  I just want
19 to make sure that we have hit everything that we need to hit,
20 including the rights advisal, any entry of information that
21 Ms. Clark wants to enter on behalf of her client, and then I
22 wanted to make a quick statement on the record regarding his
23 release.
24             THE COURT:  Go ahead.
25             MS. BARR:  Okay.  So just for the record, to make

1  sure it's clear, I do believe that some of the information in
2  the pretrial services report is inconsistent, and it does raise
3  a question about the defendant's very identity.  Hopefully,
4  we'll be able to resolve some of this by the time of the Monday
5  hearing, including by, potentially, defendant being able to
6  reach out to his supported siblings in Eugene, who may be able
7  to shed some light on his identity.
8       We do believe that he is a previously removed alien with
9  citizenship from Canada, so we do have concerns about his
10 identity and his flight risk at this time.
11      And in addition to that, I would note that the pretrial
12 services report lists a conviction for the defendant in
13 North Dakota, which is not one of the states that the friend to
14 whom he's going to be released indicates he has known defendant
15 has resided at or resided in.  So there is some concern about
16 who he is, how much his friend knows about him, his ties to all
17 of these other states, and I just want to make sure that
18 Your Honor is aware of that.
19           THE COURT:  Thank you.  I did read the pretrial
20 report.
21      Ms. Clark, anything else?
22           MS. CLARK:  No, Your Honor.  Thank you.  We'll see
23 you Monday.
24      Actually, I'll let you know that I'm not available on
25 Monday, but one of my capable colleagues will be here with

1   Mr. Tawasi on that day.
2           THE COURT:  Mr. Tawasi, one more thing that relates
3   to the third-party custodian obligation that your friend has
4   agreed to undertake.  Third-party custodians, among other
5   obligations, agree to notify law enforcement immediately if the
6   person in their charge has violated any of the conditions of
7   their release.
8       So if you choose to violate a condition between now and
9   next Monday, you put your friend in the position of having to
10  report you to law enforcement.
11          THE DEFENDANT:  (Nodding head.)
12          THE COURT:  If he doesn't do that, for whatever
13  reason, then he puts himself at risk.  The best way to avoid
14  putting him at risk and in that position is to simply follow
15  the Court's orders.
16      Understood?
17          THE DEFENDANT:  Yes, sir.  Absolutely.
18          THE COURT:  All right.  Thank you.
19      That concludes this case.
20          MS. BARR:  My apologies, Your Honor.  This is
21  AUSA Barr again.
22          THE COURT:  Go ahead.
23          MS. BARR:  If I may, out of -- out of an abundance of
24  caution, move to stay the release order at this time?
25          THE COURT:  No.  Denied.

```
 1        Anything else?
 2             MS. BARR:   Nothing further, Your Honor.
 3             THE COURT:  See you Monday.
 4             MS. CLARK:  Thank you.
 5                     (Hearing concluded.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E
 2              United States of America v. Tawasi
 3                        3:20-mj-00164
 4                        First Appearance
 5                         July 24, 2020
 6        I certify, by signing below, that the foregoing is a true
 7   and correct transcript, to the best of my ability, of the video
 8   conference proceedings heard via video conference, taken by
 9   stenographic means.  Due to the audio-visual connection,
10   parties appearing via speakerphone or cell phone or wearing
11   masks due to coronavirus, speakers overlapping when speaking,
12   speakers not identifying themselves before they speak, fast
13   speakers, the speaker's failure to enunciate, background noises
14   and/or other technical difficulties that occur during video
15   conference proceedings, this certification is limited by the
16   above-mentioned reasons and any technological difficulties of
17   such proceedings occurring over the video conference at the
18   United States District Court of Oregon in the above-entitled
19   cause.
20        A transcript without an original signature, conformed
21   signature, or digitally signed signature is not certified.
22
23   /s/Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
     _____
24
     Official Court Reporter      Signature Date: 8/25/2020
25   Oregon CSR No. 98-0346       CSR Expiration Date:  9/30/2020
```